## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KARS 4 KIDS INC., | **MEMORANDUM AND ORDER** |
| *Plaintiff*, | |
| v. | Civil Action No. 3:14-cv-7770-PGS-LHG |
| AMERICA CAN!, | |
| *Defendant*. | |
| AMERICA CAN! CARS FOR KIDS, | |
| *Plaintiff*, | |
| v. | Civil Action No. 3:16-cv-4232-PGS-LHG |
| KARS 4 KIDS INC., | |
| *Defendant*. | |

This case has a long, torturous history. Presently, a Motion for Reconsideration (ECF No. 456; hereinafter the "Motion") remains open at the District Court level. In addition, there are a number of letter applications seeking overlapping relief (ECF Nos. 427, 428, 429, 430, 437, 438, 495, 500, 501 and 504; hereinafter the "Application"). A brief procedural history is necessary to orient the discussion around the Motion and the Application.

1

I.

During the pre-trial stage of the litigation, the Court severed the matter by trying the liability issues before a jury, while damages and equitable remedies were reserved for the Court. On May 28, 2019, the jury found that Kars 4 Kids Inc. ("K4K") infringed on America Can! Cars for Kids' ("ACCFK") trademark in Texas. (ECF No. 245). In order to enforce the jury's determination, the Court entered a Final Judgment Imposing Permanent Injunction (ECF No. 378; the "Permanent Injunction") and awarded monetary damages to disgorge K4K's profits in Texas. The Permanent Injunction also implemented thirty (30) internal controls that limit the use of K4K's mark in Te xas. Those controls are set forth in a comprehensive report developed by K4K's internal control expert, William J. Mellon of FTI Consulting, Inc. (the "Mellon Report"). The internal controls developed in the Mellon Report include:

1.   Controlling donations submitted through call center personnel and K4K's websites (Section 4, Exhibit I);

2.   Controlling practices of advertising managers and staff who monitor "pay-per-check advertising via search engines, websites and social media 'platforms' (e.g., Yahoo and Facebook are examples of advertising platforms)." (Section 5, Exhibit II); and

3.   Controlling Texas-related procedures for potential future advertising channels, non-advertising vendors, local Texas phone numbers and K4K's

website and training of personnel (Section 6,
Exhibit III).

(ECF No. 378, Appendix A).

The Permanent Injunction did not impact K4K's advertising on SiriusXM
Radio for two reasons. First, in layman's terms, SiriusXM Radio is transmitted
from a satellite, and then connects to receivers of SiriusXM subscribers, wherever
they may be. Therefore, there are no precise geographical boundaries that could
exclude advertising from SiriusXM transmissions from entering into Texas.
Secondly, there was little or no data on the volume of SiriusXM advertising by
K4K.

Despite those reasons, the Court ordered the parties to confer and select an
independent auditor to "assess whether Kars 4 Kids received Texas donations in
connection with SiriusXM Radio advertising during that period and recommend
whether the internal control procedure set forth in Section 7, Exhibit IV—
Alternative Control for SiriusXM—of the Mellon Report is warranted under the
circumstances." (ECF No. 378). The parties selected and the Court appointed
William Morrison, a forensic accountant of Withum Smith & Brown, P.C. (ECF
No. 397). Mr. Morrison submitted a report with his findings and conclusions on
October 27, 2021 (the "Withum Report"). Ultimately, the Withum Report
concluded that "the internal control procedure set forth in Section 7, Exhibit IV—

Alternative Control for SiriusXM—of the Mellon Report is ***not*** warranted . . . ." (Withum Report at 2) (emphasis in original).

Subsequently, litigation events – namely the appeal of the equitable damages and Mr. Morrison's audit – ran into the Fall of 2021. In November and December 2021, the parties submitted a flurry of letters regarding the Withum Report. (ECF Nos. 427, 428, 429, 430, 437 and 438). ACCFK's initial position concerning the Withum Report was that it:

> fails to address any calls or Internet inquiries from within the State of Texas received by Kars 4 Kids ("K4K"), including both from those who intended to donate to ACCFK, and mistakenly contacted K4K, and from those who sought to donate to K4K as a result of K4K advertising on Sirius. Withum's Report is focused on actual completed transactions; the Report does not address any situation where a vehicle came in from Texas which K4K could not accept under the injunction.

(ECF No. 427). K4K opposed any further audit and responded that the Withum Report satisfied the Court's directive. (ECF No. 428).

Supplementing its prior objection, ACCFK alleged, without a certification or documentary evidence, that "the Withum Report does not address whether K4K has referred potential donors to Junk for Joy (a "sister organization") . . . from which K4K *or those in active concert with it* receive a benefit." (ECF No. 429) (emphasis in original). K4K replied to this charge noting that "(i) it does not forward any 'attempted donations' to ***any entity*** (Junk for Joy included) and (ii)

4

Junk for Joy has no public-facing affiliation with Kars 4 Kids and employs no use of KARS 4 KIDS or 1-877-KARS-4-KIDS . . . or any form thereof in its advertising." (ECF No. 430) (emphasis in original).

Overlapping the parties' dispute concerning the Withum Report was the Third Circuit remand decision, *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209 (3d Cir. 2021), which mandated that the district court reexamine, among other things, its laches decision and the application of the *Banjo Buddies* factors with respect to disgorgement. The Third Circuit placed in issue whether ACCFK's claim could survive the laches objection. Accordingly, the Court concentrated its efforts on reviewing the Third Circuit's Opinion and applying the instructions of the Mandate to issue a decision wherein it denied the laches objection based on the Court's evaluation of the facts. (ECF No. 450). The Court's findings of facts therein were far different from the proposed findings submitted by either party, and may not have been considered by Mr. Morrison in performing his audit. Hence, the Court ordered Mr. Morrison to review the Withum Report in light of the Court's findings of fact and conclusions of law (ECF No. 450) and ACCFK's objection to the Withum Report (ECF No. 427) in order to advise whether the Permanent Injunction should be amended. (ECF No. 453).

At that point, on June 23, 2022, K4K brought the instant Motion for Reconsideration and Clarification of that Order. (ECF No. 456). K4K objected to

the Court's Order on several grounds including (1) that Mr. Morrison was not qualified to perform the work prescribed by the Court's Order; (2) K4K was uncertain about the scope of Mr. Morrison's assignment in assessing a modification, and (3) Mr. Morrison should review all of the related correspondence submitted. ACCFK opposed the Motion and reiterated its arguments from November and December 2021.

Also pending on the Court's docket at the time was a Motion to Alter or Amend Judgment. (ECF No. 466). Once again, the Court set aside the dispute regarding K4K's SiriusXM advertising and reevaluated equitable damages in light of the Court's findings of fact in its June 10, 2022 Memorandum and Order. (ECF No. 450). After determining the appropriate damages amount in a Memorandum and Order (ECF No. 490), the Court turned back to the Motion and noticed a lack of activity on the Motion and Application. Therefore, it appeared that the status quo was operating reasonably. As such, the Court expressed its intent to grant the Motion and vacate the June 15, 2022 Order. (ECF No. 494).

ACCFK objects because it alleges, once again without a certification, that K4K receives communications from potential donors in Texas who heard K4K's advertisements on SiriusXM Radio. Further, ACCFK alleges that in order to circumvent the Permanent Injunction, K4K refers said donors to an affiliated organization, such as Junk for Joy. (ECF No. 460).

II.

Pursuant to Rule 60(b), "the court may relieve a party . . . from a final judgment,

order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable
> diligence, could not have been discovered in time to
> move for a new trial under Rule 59(b); (3) fraud (whether
> previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void; the judgment has been satisfied,
> released, or discharged; (5) it is based on an earlier
> judgment that has been reversed or vacated; or applying
> it prospectively is no longer equitable; or (6) any other
> reason that justifies relief.

Fed. R. Civ. P. 60(b).

A Rule 60(b) motion "must be made within a reasonable time--and for

reasons (1), (2), and (3) no more than a year after the entry of the judgment or

order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Reconsideration is

within the District Court's "sound discretion." *Pierce Assocs., Inc. v. Nemours*

*Found.*, 865 F.2d 530, 548 (3d Cir. 1988).

K4K did not specify under which subsection of Rule 60(b) it seeks

reconsideration, however, the Court will assume the motion is made pursuant to

Rule 60(b)(1) or (6). Whereas, "Rule 60(b)(1) is concerned with mistakes of a

substantive nature," *Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975), Rule

60(b)(6) is a "catch-all provision" for relief. *See Linbald v. Nationwide Mut. Ins.*

*Co.*, No. CV 14-908 (NLH/KMW), 2016 WL 614407, at *2 (D.N.J. Feb. 16, 2016). "Relief under Rule 60(b)(6) is 'extraordinary, and special circumstances must justify granting relief under it.'" *Lifted Rsch. Grp.. Inc. v. Chaudry*, No. 06-5580 (SDW), 2008 WL 11510727, at *1 (D.N.J. Mar. 6, 2008) (quoting *Moolenaar v. Government of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir.1987)). Extraordinary circumstances require a showing that "without relief from the judgment, an extreme and unexpected hardship will result." *Id.* (internal quotation marks and citation omitted). Because K4K has not demonstrated extraordinary circumstances to justify relief, the instant motion will be treated as one under Rule 60(b)(1). Under Rule 60(c)(1), K4K properly moved for reconsideration within one year from the entry of the Court's Order. (ECF No. 453).

III.

The Court grants the Motion for Reconsideration (ECF No. 456) and vacates its June 15, 2022 Order (ECF No. 453) for the following reasons.

First, ACCFK's allegations about K4K directing transactions to affiliated entities are non-specific and lack any factual support. They are based on supposition rather than facts. As an example, ACCFK asserts that it is harmed because K4K is directing Texas donors to other organization. However, ACCFK provides no evidence whatsoever to base its accusations against K4K, and therefore, its allegations of harm are unfounded. (ECF No. 495). Moreover, the

8

Court had informal conversations with Mr. Morrison who indicated that the audit he conducted did not produce such information; and a further audit of same is usually supported by an accompanying factual statement or a tip about an impropriety. As such, the Court concludes that, without a factual basis, to act on ACCFK's supposition is unreasonable.

Moreover, the Withum Report complied with the Court's Permanent Injunction. That Order directed Mr. Morrison to "assess whether Kars 4 Kids received Texas donations in connection with SiriusXM Radio advertising during that period and recommend whether the internal control procedure set forth in . . . the Mellon Report is warranted under the circumstances." (ECF No. 378). Mr. Morrison did precisely that. In short, the Withum Report concluded that "the internal control procedures set forth in Section 7, Exhibit 11 – Alternate Control for SiriusXM – of the Mellon Report is not warranted under the circumstances." (Withum Report at 2). With respect to K4K, the Withum Report made the following findings:

a. Out of a sample of 50 vehicle donations picked up, only two were referred by Sirius XM, but they were not from Texas;

b. Out of sample of four vehicle donations awaiting pick-up, one was referred by Sirius XM, but it was not from Texas;

c. Out of a sample of four cash donations, none were referred by Sirius XM; and

    d.  Out of a sample of two real estate donations, none were referred by Sirius XM.

(Withum Report at 6).

To expand the scope of the Final Judgment Imposing Permanent Injunction and seek additional time and effort of Mr. Morrison at the expense of both parties, ACCFK must provide some factual basis rather than rely on supposition.

Secondly, ACCFK may seek relief under the Final Judgment Imposing Permanent Injunction (ECF No. 378) if it has factual support.  The Permanent Injunction provides "[e]ither party may apply for relief from this Order" so long as 10 days' notice is given to one's adversary setting forth "with specificity of the nature of the alleged issue." Hence, ACCFK has an open door for relief if it follows this provision.

Notwithstanding the reasons above, the Court agrees with ACCFK's position that the Permanent Injunction imposed internal controls and the appointment of a forensic accountant to evaluate the effectiveness of the injunction. As such, Mr. Morrison is fully qualified to assess whether donations have been re-directed or forwarded to an organization affiliated with K4K. But, in light of the Court's decision today, it is necessary to present evidence and some substantive facts to prompt a re-audit.

Nothing in this Memorandum bars any request for post-judgment discovery, if appropriate and reasonable.

## **ORDER**

**IT IS** on this 22nd day of March, 2023;

**ORDERED** that the Motion for Reconsideration and Clarification (ECF No. 456) is **GRANTED**; and it is further

**ORDERED** that the Court's June 15, 2022 Order (ECF No. 453) is **VACATED** in its entirety; and

**ORDERED** that the relief sought in the letter applications (ECF Nos. 427, 428, 429, 430, 437, 438, 495, 500, 501 and 504) is **DENIED**.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.